ISMAEL MOSCOSO, demandante y apelante, *v.* ISMAEL RIVERA, demandado y apelado.

Número 11006.

*Sometido:* 2 de marzo de 1954. *Resuelto:* 14 de mayo de 1954.

*Práxedes Álvarez Leandri,* abogado del apelante; *Aníbal Padilla,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Ismael Moscoso radicó en la Sección de Ponce del anterior Tribunal de Distrito una demanda contra Ismael Rivera, en la que solicitaba que se dictase una sentencia declaratoria en la que se determinase que Ismael Rivera no era, ni es, hijo natural reconocido de Ismael Moscoso. El Tribunal de Ponce resolvió que la demanda no aduce hechos suficientes para constituir una reclamación válida de sentencia declaratoria y dictó sentencia desestimando la demanda. Ismael Moscoso ha apelado de esa sentencia ante este Tribunal.

Dos problemas esenciales se plantean en esta apelación. El primero se refiere al poder de nuestros tribunales para dictar una sentencia declaratoria en cuanto al *status*, o falta de *status* de una persona como hijo de otra persona, o en cuanto a la paternidad, o ausencia de paternidad, de una persona con respecto a otra persona. Suponiendo la existencia de tal poder, el segundo problema guarda relación con la suficiencia de los hechos alegados en la demanda presentada en este caso para justificar un remedio de sentencia declaratoria.

■■■ Bajo nuestra Ley de Sentencias Declaratorias, aprobada el 25 de abril de 1931 (pág. 379), nuestros tribunales tienen la autoridad para dictar sentencias declaratorias en cuanto al estado (*status*) de las personas y en cuanto a las relaciones jurídicas entre ellas. Las secciones pertinentes de esa ley disponen lo siguiente:

"Sección 1.—(*Alcance*).—Las cortes de distrito tendrán autoridad, en sus respectivas jurisdicciones, para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará motivo suficiente para atacar un procedimiento o acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser, en su forma y efectos, afirmativa o negativa, y tendrán la eficacia y vigor de las sentencias o resoluciones definitivas.

"Sección 2.— (*Facultad de interpretación, etc.*).—Toda persona interesada en una escritura, testamento, contrato escrito, u otros documentos constitutivos de contrato, o cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, ordenanza municipal, contrato o franquicia, podrá obtener la determinación de cualquier divergencia acerca de la interpretación o validez de dichos estatutos, ordenanzas, contrato o franquicia, y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven.

"Sección 3.— (*Antes del cumplimiento*).—Un contrato podrá ser interpretado antes o después de haber sido infringido.

"Sección 4.— (*Albaceas, etc.*).—Los albaceas, administradores judiciales, fideicomisarios, tutores, acreedores, legatarios, herederos, causahabientes o *cestuis que trust*, actuando en esas capacidades, o en representación de otras personas interesadas, podrán pedir y obtener una declaración de derechos o de relaciones jurídicas, en todos los casos en que se administren fideicomisos, bienes de difuntos, menores, incapacitados o insolventes;

"(*a*) Para determinar sobre clases de acreedores, legatarios, herederos, causahabientes u otros; o

"(*b*) Para ordenar a los albaceas, administradores o fideicomisarios que ejecuten o se abstengan de ejecutar cualquier acto determinado en su capacidad fiduciaria; o

"(*c*) Para determinar sobre cualquier cuestión que surja en la administración de los bienes o del fideicomiso, incluyendo las de interpretación de testamentos y otros documentos.

"Sección 5.— (*Enumeración no exclusiva*).—La enumeración hecha en las secciones 2, 3 y 4 no limita ni restringe el ejercicio de las facultades generales conferidas en la sección 1, dentro de cualquier procedimiento en que se solicite un remedio declaratorio, siempre que una sentencia o decreto hubiere de poner fin a la controversia o despejar una incertidumbre.

"Sección 6.— (*Discreción*).—La corte podrá negarse a dar o registrar una sentencia o decreto declaratorio cuando tal sentencia o decreto, de ser hecho o registrado, no hubiera de poner fin a la incertidumbre o controversia que originó el procedimiento.

"Sección 7.— (*Revisión*).—Todas las órdenes, sentencias y decretos autorizados por esta Ley podrán ser revisados al igual que cualesquiera otras órdenes, sentencias y decretos.

"..    .    .    .    .    .    .    .

"Sección 11.— (*Partes*).—Cuando se solicite un remedio declaratorio deberán incluirse como partes todas aquellas personas

que tengan o aleguen tener algún interés que pueda ser afectado por la declaración, y ninguna declaración perjudicará los derechos de personas que no fueren partes en el procedimiento. En cualquier procedimiento en que se discuta la validez de una ordenanza o franquicia municipal, el municipio correspondiente deberá ser incluído como parte y tendrá derecho a ser oído, y si se tratare de la anticonstitucionalidad de un estatuto, ordenanza o franquicia, el Fiscal General también deberá ser notificado con copia del procedimiento y tendrá derecho a ser oído.

"Sección 12.—(*Interpretación*).—La presente, por su naturaleza, es una ley de remedios; y su propósito el de autorizar la determinación de derechos, estados, y otras relaciones jurídicas, y conceder remedios contra la incertidumbre o inseguridad de tales derechos, estados y otras relaciones jurídicas; y deberá ser liberalmente interpretada y aplicada.

"Sección 13.—(*Definiciones*).—La palabra 'persona' dondequiera que en esta Ley se usa deberá ser interpretada en el sentido de significar cualquier persona, sociedad, compañía por acciones, asociación o sociedad no incorporada, o corporación municipal o de cualquier otra clase.

"Sección 14.—(*Disposiciones separables*).—Las varias secciones y disposiciones de esta Ley, con excepción de las secciones 1 y 2, se declaran por la presente independientes y separables, y la nulidad, en su caso, de cualquier parte o aspecto de las mismas no afectará al resto de la ley ni será causa de su nulidad e inefectividad.

"Sección 15.—(*Uniformidad de Interpretación*).—Esta Ley deberá ser interpretada y considerada de modo que realice su propósito general de hacer uniforme la ley en aquellas jurisdicciones que la adopten, y en el sentido de armonizarla, en tanto cuanto sea posible, con las leyes y reglamentos federales sobre la materia de sentencia y decretos declaratorios." [1]

Es cierto que bajo las secciones 2, 3 y 4 las declaraciones sobre *status* están limitadas a ciertas clases de litigios que

---

[1] La Regla 57, de las Reglas de Enjuiciamiento Civil, dispone lo siguiente:

"El procedimiento para obtener una sentencia declaratoria, autorizado por la Ley núm. 47 aprobada el 25 de abril de 1931, será de acuerdo con estas Reglas. La existencia de otro remedio adecuado no impedirá que se dicte una sentencia declaratoria en casos apropiados. La Corte podrá ordenar una vista rápida en una acción para sentencia declaratoria, así como adelantarla en el calendario."

envuelvan contratos, testamentos, ordenanzas, estatutos o franquicias, pero bajo la sección 5, la enumeración hecha en las secciones 2, 3 y 4 no limita ni restringe el ejercicio de las facultades generales conferidas en la sección 1, entre las cuales se incluye la autoridad de los tribunales para dictar sentencias declaratorias sobre el *status* y relaciones jurídicas de las personas.  Interpretando leyes de sentencias declaratorias idénticas a la nuestra, se ha establecido el criterio, que adoptamos, al efecto de que un tribunal puede dictar una sentencia declaratoria sobre el estado de una persona como hijo natural o ilegítimo de otra persona, sobre el hecho de la paternidad y sobre relaciones filiales, aun en aquellos casos que no envuelvan la interpretación de contratos, documentos, estatutos, ordenanzas, testamentos o franquicias.  *Miller* v. *Currie*, 242 N. W. 570; *Carlson* v. *Bartels*, 10 N.W.2d 671; *Morecroft* v. *Taylor*, 225 App. Div. 562, 234 N.Y.S. 2; *Melis* v. *Department of Health*, 24 N.Y.S.2d 51; *Borchard, Declaratory Judgments*, 2d. ed., pág. 484 *et seq.*, 284; Anderson, *Actions for Declaratory Judgments*, 2d. ed., Tomo 2, pág. 1468 *et seq.*, sección 643; 16 Am. Jur. 316; 62 Harv.L.Rev. 787, 847, "Developments in the Law of Declaratory Judgments".  Esa facultad judicial de dictar sentencias declaratorias sobre el *status* filial de las personas surge claramente de nuestra Ley de Sentencias Declaratorias.  Las secciones 2, 3 y 4 no limitan la generalidad de la sección 1.  *Superior Dairy* v. *Stark County Milk Producers' Ass'n.*, 100 N.E.2d 695.

██ En los casos citados se trataba de reclamaciones instadas por los presuntos hijos con el fin de que se estableciese afirmativamente su *status*.  En el caso de autos no se pretende obtener una declaración afirmativa o positiva sobre la paternidad sino que, por el contrario, el demandante no es el supuesto hijo, sino que es una persona que solicita que se declare, en forma negativa, que él no es el padre del demandado.  Se trata de un demandante que impugna la existencia

de determinado *status*. Pero tal distinción no destruye la procedencia de un decreto declaratorio. La sección 1 de la propia Ley de Sentencias Declaratorias dispone específicamente que la "declaración podrá ser, en su forma y efectos, afirmativa o negativa, y tendrán la eficacia y vigor de las sentencias o resoluciones definitivas". Bajo la ley citada, procede una demanda para que se declare, en forma negativa, que el demandante está exento de responsabilidad o libre de obligación alguna al demandado, esto es, la sentencia declaratoria puede tener una función inmunizadora. *Merchants Mut. Casualty Co.* v. *Leone*, 9 N.E.2d 552; *Faulkner* v. *City of Keene*, 155 Atl. 195; *Maryland Casualty Co.* v. *Hubbard*, 22 F.Supp. 697; 1 C.J.S., Suplemento de 1953, pág. 112; 16 Am. Jur. 292, sección 17, notas 14, 15 y 16, y pág. 338, sección 72; 87 A.L.R. 1209, 1249. En el caso de *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, se resolvió que una compañía de seguros podía válidamente presentar una demanda de sentencia declaratoria para que se declarase, en forma negativa, que un asegurado no estaba totalmente incapacitado y que, por lo tanto, al no haberse pagado las primas, la compañía estaba exenta de responsabilidad. La Corte Suprema de los Estados Unidos dijo, en parte, lo siguiente, a la pág. 244:

"Pero el carácter de la controversia y de la cuestión litigiosa a ser resuelta es esencialmente la misma, ya sea planteada por el asegurado, o por el asegurador . . . Es la naturaleza de la controversia, no el método de su presentación ni la identidad de la parte que la plantea, lo que es determinante."

En Borchard, ob. cit., se dice lo siguiente, a la pág. 21:

"La acción para obtener una llamada declaración negativa es sencillamente una expansión de la acción en equidad de eliminación de nubes sobre el título, para que en virtud de tal ampliación puedan eliminarse nubes sobre relaciones jurídicas en general, cuando los tribunales crean que un propósito útil puede ser servido. En esos casos el demandante es un demandado potencial . . . .

"La importancia del poder de demandar de parte de un poseedor de derechos que vea que esos derechos están sujetos a disputas o a un peligro potencial, consiste en que se puede obtener la protección judicial antes que el peligro haya madurado hasta convertirse en una catástrofe y antes que la otra parte inicie un litigio para hacer efectivas sus reclamaciones . . . . La seguridad y la certidumbre en las relaciones jurídicas es una cuestión de tanto interés público como de interés privado . . . ."

Efectivamente, el propósito de la ley, de pacificación y de eliminación de la inseguridad y la incertidumbre (sección 12), puede ser logrado mediante una declaración negativa de inexistencia de derechos, a instancias de un demandante que crea en forma legítima que sus intereses están sometidos al peligro de una posible reclamación judicial de otra persona. En ese caso, el demandante puede anticipar la actuación del demandado, y plantear él mismo la controversia. Lo importante es que exista una controversia real que deba ser considerada y resuelta. De ser esa la situación, carece de significación la forma en que se solicite la actuación judicial. Cualquiera de las dos partes en controversia podría solicitar su resolución. La declaración podría referirse tanto a la existencia como a la ausencia de determinados derechos.

■ Podría argumentarse que, bajo nuestro sistema de leyes, independientemente de la propia ley de sentencias declaratorias, no existe causa de acción alguna, o poder legal alguno, para impugnar la filiación en sí de un hijo natural o ilegítimo, esto es, para demostrar judicialmente que una persona no es hijo natural o ilegítimo del demandante, y que, por lo tanto, no debe concederse un remedio declaratorio que supla tal omisión del derecho sustantivo. Bajo nuestro Código Civil, el marido o sus herederos pueden impugnar un supuesto hijo legítimo, previo el cumplimiento de ciertos requisitos. El artículo 126 de nuestro Código Civil dispone, en parte, que el reconocimiento hecho a favor de un hijo que no reuna las condiciones del párrafo primero del artículo 125, podrá ser impugnado por aquéllos a quienes perjudique. En términos

generales, un reconocimiento hecho por un padre no puede ser anulado a virtud de actuaciones o manifestaciones posteriores del propio padre. En la demanda presentada en el caso de autos no se pretende impugnar un reconocimiento anterior y, por el contrario, lo que se alega en la demanda es que el demandante nunca ha reconocido al demandado, y que éste no es hijo del demandante y nunca ha cumplido con los requisitos del artículo 125, que se refiere, en parte, a la posesión continua de estado y al concubinato del padre y la madre.

■■ Aun suponiendo que, bajo nuestro derecho sustantivo, el demandante en este caso carezca de causa de acción alguna para impugnar la filiación del demandado, o su *status* como hijo del demandante, la ley de sentencias declaratorias le concede tal remedio al demandante. Se trata de un estatuto creador de nuevos remedios, que amplía los viejos remedios tradicionales y, con el propósito de disipar incertidumbres, y contribuir al logro de la paz social, concede la oportunidad de anticipar el ejercicio futuro de determinadas causas de acción mediante una declaración previa de derechos. Se trata precisamente de un remedio anterior al ejercicio efectivo de una causa de acción convencional. En el caso citado de *Aetna Life Ins. Co. v. Haworth*, supra, la Corte Suprema de los Estados Unidos indica que las leyes de sentencias declaratorias tienen solamente efectos procesales, y están inspiradas en el propósito de ampliar los remedios tradicionales. Por lo tanto, para que se pueda interponer una demanda de sentencia declaratoria no es necesario que exista una causa de acción, esto es, no es necesario que haya ocurrido la violación de un derecho ni el incumplimiento de un deber. 1 C.J.S. 1027. El poder de un tribunal para dictar sentencias declaratorias no está limitado a aquellos casos en que las partes, o una de ellas, tengan alguna causa de acción creada por alguna ley distinta a la ley de sentencias declaratorias, ya que, de establecerse tal limitación, quedaría destruído el propósito de la propia ley de sentencias declaratorias. 16 Am. Jur. 286,

sección 12. Esa ley tiene un propósito profiláctico, o sea, el de anticipar la materialización de futuras causas de acción, (*Gully* v. *Interstate Natural Gas Co.*, 82 F.2d 145, *certiorari* denegado en 298 U. S. 688), y el de ofrecer una ayuda judicial práctica para resolver una controversia antes de que ésta llegue a la etapa en que sea necesario otro remedio directo. 16 Am. Jur. 281. El fin de la ley es el de establecer una innovación en la concesión de remedios judiciales, y ese fin quedaría frustrado de limitarse la esfera de aplicación a los remedios preexistentes, o a las causas de acción tradicionales. El formular reparos a una sentencia declaratoria por el fundamento de que tal remedio no es permisible bajo otras leyes tendería a destruir la efectividad práctica, y la propia razón de ser, de la ley de sentencias declaratorias, la cual amplía el margen de utilidad de los tribunales para atender a nuevas situaciones. Considerando las circunstancias de este caso, suponiendo que el demandante carezca de causa de acción, bajo otras leyes, para plantear un litigio en cuanto al *status* del demandado, este último, si en realidad se considerase a sí mismo como hijo del demandante, podría iniciar una acción de filiación. Ya hemos visto que un demandante puede, a través de una acción de sentencia declaratoria, anticipar una posible reclamación que el demandado pueda presentar en el futuro.

▪ Nuestra ley de sentencias declaratorias no es incompatible con el sistema tradicional del derecho civil. Precisamente se ha llamado la atención al hecho de que, en España, siempre ha existido el remedio de declaraciones de derechos, ya sea en los juicios declarativos o en las acciones de "jactancia", que tenían el propósito de lograr una declaración judicial sobre la existencia o ausencia de derechos cuando un demandado alegaba o se jactaba, extrajudicialmente, de que él tenía determinados derechos contra el promovente de la acción. Borchard, ob. cit., pág. 114, 115; Enciclopedia Jurídica Española, Tomo 19, pág. 919, Tomo 20, pág. 203;

62 Harv.L.Rev. 790, en donde se dice que "la amplia acción declaratoria es una institución antigua en el Derecho Civil". En la sentencia del Tribunal Supremo de España del 27 de septiembre, comentada en el Tomo 19, pág. 920 y 921 de la Enciclopedia Jurídica Española, se resuelve que la Ley 46, tit. 2, Partida 3a., que regula la acción de jactancia, no ha sido derogada por las disposiciones del Código Civil.

Llegamos, por lo tanto, a la conclusión de que, bajo la ley de sentencias declaratorias, nuestros tribunales tienen el poder de dictar una sentencia declaratoria al efecto de que un demandado no es hijo del demandante. Pero el tribunal de Ponce, en el caso de autos, desestimó la demanda por el fundamento, esencialmente, de que, de las alegaciones en ella contenidas no surgía la existencia de una controversia real. En la demanda se alega, sustancialmente, que el demandado, "de algún tiempo a esta parte, ha dado en llamarse Ismael Moscoso, y como tal ingresó, sirvió y se licenció del Ejército de Estados Unidos, y alega dicho demandado que su apellido trae su origen y se deriva del hecho de que él es hijo natural del aquí demandante, hecho que no es cierto y el cual a todas luces propaga, difunde y esparce por todos los vientos el aquí demandado Ismael Rivera, con el natural detrimento, perjuicio y lesión para el aquí demandante, que resulta afectado en sus relaciones familiares, sociales y comerciales; que nunca le han conocido hijo que responda por el nombre de Ismael Rivera y que por tal motivo inquieren cerca de él sobre el nuevo alegado nexo familiar entre el aquí demandante y el aquí demandado; que el demandante ha requerido al demandado para que cese en sus infundadas imputaciones de parentesco y el demandado continúa difundiendo sus viciosas imputaciones, con la natural zozobra, perjuicio y lesión para este demandante"; que el demandado nació el 24 de septiembre de 1917, apareciendo inscrito su nacimiento como hijo natural de Dolores Rivera; que el demandante nunca vivió en concubinato con Dolores Rivera, madre del deman-

dado, en fecha u ocasión alguna; que el demandado no se halla y nunca se ha hallado en la posesión continua del estado de hijo natural del demandante y que nunca ha existido ni existe escrito indubitado del aquí demandante, donde expresamente reconozca la paternidad del demandado, y que es la actitud del demandado el hacerse pasar por hijo del demandante. Se solicita un decreto declaratorio al efecto de que no ha habido el concubinato, posesión de estado o escrito indubitado que la ley requiere y que Ismael Rivera no es hijo natural reconocido de don Ismael Moscoso.

Una demanda de sentencia declaratoria debe exponer hechos que demuestren la existencia de una controversia real y actual entre partes que tengan intereses legales adversos. 16 Am. Jur. 333; 62 Harv.L.Rev. 825; *Katz Inv. Co.* v. *Lynch*, 47 N.W.2d 800; *School Dist. No. 1* v. *School Dist. of City of Lansing*, 50 N.W.2d 150. La cuestión básica a determinar es al efecto de si los hechos alegados demuestran que existe una controversia sustancial entre partes que tengan intereses legales adversos, de suficiente inmediación, madurez y realidad para que hagan aconsejable el remedio declaratorio. *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U.S. 270. Debe surgir de la demanda que el demandado ha planteado, afirmado o aseverado positivamente, y en forma extrajudicial, una reclamación o derecho opuesto a la aserción del demandante, quedando establecido un conflicto extrajudicial entre los intereses de ambas partes. Borchard, ob. cit., pág. 29, 30, 35 y 36. Debe demostrarse la aserción o aseveración activa y antagónica de un derecho por una de las partes, y que la otra parte ha negado la existencia de ese derecho, debiendo la controversia referirse a un conflicto real, y no teórico (1 C.J.S. 1026), y que el demandado ha estado actuando, o amenaza con actuar, en tal forma que exista la probabilidad sustancial de que se lleve a cabo una invasión de los derechos del demandante. *Aetna Life Ins. Co.* v. *Haworth*, supra. La controversia no debe ser abs-

tracta, teórica, remota, académica, o especulativa, esto es, debe tener suficiente actualidad, y si el daño que se pueda ocasionar en el futuro depende de hechos contingentes que son demasiado especulativos, no podría obtenerse una declaración judicial anticipada. *Eccles* v. *Peoples Bank*, 333 U. S. 426; *International Longshoremen's and Warehousemen's Union* v. *Boyd*, resuelto el 8 de marzo de 1954 por la Corte Suprema de los Estados Unidos; *United Public Workers* v. *Mitchell*, 330 U. S. 75; 1 C.J.S. 1024. La actualidad de la controversia surge cuando el tribunal tenga que enfrentarse con realidades, y no con hechos imaginados. *New Discoveries* v. *Wisconsin Alumni R. Foundation*, 13 F.Supp. 596. Un tribunal no debe determinar derechos futuros en anticipación de acontecimientos que posiblemente no ocurran. *Skowron* v. *Skowron*, 47 N.W.2d 326, resuelto en el año 1952.

El requisito de la existencia de una controversia real está conectado con la regla al efecto de que la concesión de una sentencia declaratoria, considerada ésta como un remedio en equidad, descansa en el ejercicio de una sana discreción judicial. *Power Electric Co.* v. *Buscaglia*, 63 D.P.R. 984; *Moffett* v. *Buscaglia, Tes.*, 64 D.P.R. 878; *International Longshoremen's Union* v. *Boyd*, supra; *Eccles* v. *Peoples Bank*, supra. Esa discreción no es ilimitada ni desencadenada. *Altvater* v. *Freeman*, 319 U. S. 359, 363; *Columbia Pictures Corp.* v. *De Toth*, 26 Cal.2d 753, 162 A.L.R. 747. Se trata de una discreción judicial que debe ejercitarse dentro de ciertas fronteras, contornos y postulados jurídicos. Debe establecerse una comparación, entre determinados intereses públicos y sociales que puedan quedar afectados, y los intereses privados de las partes, con respecto a los cuales debe medirse la magnitud y realidad práctica de la necesidad de un demandante para obtener una sentencia declaratoria, y el efecto de tal remedio sobre un demandado, al obligársele a enfrascarse en un litigio en forma anticipada. La necesidad de una sentencia declaratoria debe tener raíces en la realidad, hasta el

punto de que la controversia no sea demasiado remota y especulativa. Debe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada. Tal como se indica en 34 Mich.L.Rev. 85, 88, un demandado en un procedimiento de decreto declaratorio tiene un interés en no verse compelido a asumir los gastos y molestias de un litigio cuyo resultado realmente no le concierne. Como se sigue señalando en el ensayo citado, cuando la utilidad del litigio al demandante es en sí dudosa, el interés del demandante en no ser obligado a enfrascarse en un litigio puede ser suficiente para derrotar la acción. De un lado, debe considerarse la posible efectividad del remedio. De otro lado, no podemos olvidar que la ley de sentencias declaratorias le concede a los tribunales la oportunidad de extender el margen de su actuación efectiva, teniendo tal remedio una destacada influencia en el desarrollo de la ley. En la nota citada se indica que el factor determinante debe referirse a la importancia comparativa de los intereses en conflicto, y a la eficiencia probable del remedio.

En 62 Harv.L.Rev. 787, 794 *et seq.*, se señala que, aunque es imposible colocar todos los casos dentro de una sola rúbrica general, el criterio básico en cuanto a la existencia de una controversia que amerite ser resuelta por una sentencia declaratoria se refiere a la probabilidad sustancial, o a la relativa seguridad, de que se entable eventualmente un litigio coercitivo plenario, de no dictarse una sentencia declaratoria. Por ejemplo, una acción de sentencia declaratoria sería prematura si no existe peligro para el demandante de una actuación hostil del demandado, o si tal peligro es especulativo y depende de contingencias que probablemente no se materializarán en la realidad.

Aplicando los anteriores conceptos al caso de autos, y considerando como ciertos los hechos alegados en la demanda, de tales alegaciones surge que ambas partes tienen intereses legales adversos y que existe una controversia actual

entre las partes. Existe un interés legal de pronunciada significación en cuanto a la paternidad o filiación del demandado, esto es, en cuanto a si el demandado es o no hijo del demandante. En la demanda se alega que el demandado no sólo ha hecho afirmaciones públicas y aseveraciones positivas de que él es hijo del demandante, aun después de habérsele llamado la atención por el demandante, sino que también él ha actuado en forma concreta a los fines de hacer efectivas esas aserciones, al usar el apellido del demandante como el suyo propio al ingresar y servir en las fuerzas armadas y a utilizar ese apellido en sus relaciones sociales a base de la alegación expresa de que él es hijo del demandante. El alegado conflicto es real, según la demanda, ya que, de un lado, se alega que el demandado ha formulado aseveraciones activas y antagónicas de un derecho, y el demandante niega la existencia de ese derecho. La controversia no es remota, y tiene suficiente actualidad. No depende de hechos contingentes o especulativos o imaginarios, sino de hechos y actuaciones que se han llevado a cabo en la realidad. De la demanda surge que el demandado ha actuado como si él fuese hijo del demandante. Desde el punto de vista del ejercicio de una sana discreción judicial, el remedio declaratorio no lesiona interés público o social alguno, ya que tal interés no queda vulnerado por el (sic) que se resuelva anticipadamente una controversia sobre el *status* de una persona. El procedimiento declaratorio ofrece a ambas partes amplias y adecuadas garantías y oportunidades para que ellos hagan valer y presenten prueba para sostener sus respectivos puntos de vista. Los intereses legítimos del demandado no quedan vulnerados por que se requiera de él que presente prueba sobre su *status*, en la actualidad y antes de que los labios del demandante queden sellados por su fallecimiento eventual. No existe política pública alguna que indique que el demandado debería tener la oportunidad y el derecho a seleccionar la fecha y ocasión en que ha de entablarse el litigio sobre su filiación. En el balance

de conveniencias, la necesidad y utilidad para el demandante de que la controversia se dilucide en la actualidad tiene suficiente magnitud y relevancia para que quede justificado el hecho de compeler al demandado a enfrascarse anticipadamente en un litigio. De las alegaciones de la demanda no surge que al demandado no le concierne el que se dilucide la controversia. No debemos olvidar que, en esta apelación, estamos solamente en la etapa de la suficiencia de la demanda y no estamos prejuzgando los méritos intrínsecos de este caso. En su contestación, y en la vista del caso en sus méritos, el demandado tendrá la oportunidad de alegar y demostrar que realmente no existe una controversia entre las partes, y que realmente él no alega que sea hijo del demandante, y ahí terminaría el litigio, teniendo en cuenta especialmente que la cuestión de si existe o no una controversia debe resolverse preliminarmente, antes de que se pueda considerar la controversia en sí. *Webster Chicago Corp.* v. *Minneapolis Honeywell Reg. Co.*, 99 F.Supp. 503. Además, a los fines de que se pueda formular un criterio adecuado en cuanto a la existencia de una controversia y en cuanto a la forma en que se deba ejercitar la discreción judicial, es preferible que se permita el desarrollo de las cuestiones litigiosas más allá de las alegaciones de la demanda ya que tales problemas pueden resolverse en forma más efectiva a la luz de la prueba que presenten ambas partes, con una cabal consideración de los factores que puedan influenciar el ejercicio de una sana discreción. 62 Harv.L.Rev. 826. Desde otro punto de vista, de la demanda surge la probabilidad sustancial de un litigio coercitivo y plenario en el futuro, ya que, si el demandado utiliza el apellido del demandante, como hijo de él, y si públicamente alega que él es hijo del demandante, surge la probabilidad de que el demandado entable luego una acción de filiación.

El tribunal a quo se basó especialmente en el caso de *Somberg* v. *Somberg*, (N.Y.) 188 N. E. 137, para llegar a

la conclusión de que de las alegaciones de la demanda no surge una controversia real entre las partes. Se trataba de una sentencia declaratoria sobre un *status* matrimonial. La demandante era una mujer casada con uno de los demandados, y no se había divorciado. El esposo vivía con otra mujer, como si fuesen marido y mujer, habiendo nacido un hijo de esas relaciones. La verdadera esposa solicitó una sentencia declaratoria, al efecto de que ella era la esposa auténtica del codemandado. Se resolvió que no existía una controversia real entre las partes (1) porque el *status* de la demandante como esposa del codemandado estaba oficialmente garantizado, no habiendo mediado divorcio alguno entre ellos y (2) porque la pretendida y falsa alegación de que los dos codemandados estaban casados entre sí se basaba solamente en rumores. Se resolvió que una sentencia declaratoria bajo tales circunstancias no servía propósito alguno que fuese útil y práctico. Independientemente del hecho de que esa opinión ha sido criticada por el hecho de que la demandante tenía un interés legítimo, desde el punto de vista de sus relaciones sociales, en desvirtuar falsedades sobre su *status* matrimonial, de que la reclamación falsa estaba sostenida por prueba ostensible al actuar públicamente los codemandados como marido y mujer y era, por lo tanto, de mayor importancia que un mero rumor, (Borchard, ob. cit., pág. 45, 480), el caso citado es distinto al de autos. Aquí no se ha consagrado oficialmente el hecho de que el demandado no sea hijo del demandante, y las alegaciones y actuaciones del demandado trascienden de la categoría de meros rumores.

En el caso de *Columbia Pictures Corp.* v. *De Toth*, supra, la Corte Suprema de California revocó la actuación de un tribunal inferior al desestimar una demanda de sentencia declaratoria, resolviéndose que tal ejercicio de discreción era arbitrario, y que si en la demanda se exponen hechos y cir-

cunstancias que demuestran que una sentencia declaratoria sería un remedio apropiado, el tribunal no debería negarse a seguir ventilando la acción.

*Debe revocarse la sentencia apelada y devolverse el caso a la Sala de Ponce del Tribunal Superior para que allí se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*

Los Jueces Asociados Sres. Sifre y Belaval concurren en el resultado.

———

Opinión disidente del JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ.

La situación de los hijos nacidos fuera de matrimonio—naturales e ilegítimos no naturales, y los naturales de la década de 1942 a 1952—adquiere caracteres de tragedia con la decisión que, en contra de principios jurídicos reconocidos, y sin precedente igual en jurisdicción otra alguna, hoy emite el Tribunal en este caso.

Aplicando un estatuto de procedimiento y de remedios, como lo es la Ley de Sentencias Declaratorias, el Tribunal sienta las bases para que se destruyan derechos sustantivos de filiación de esos hijos, privándoles de la acción que, para hacer efectivos esos derechos, les otorga el Código Civil y la Ley 229 de 12 de mayo de 1942, enmendada por la núm. 243 de 12 de mayo de 1945, ya que se somete el ejercicio de la misma al capricho placentero del padre, quien por ley está obligado a reconocer cuando no lo ha hecho voluntariamente. En efecto, la decisión de hoy concede al padre una acción *negatoria de filiación*—y una acción negatoria de alimentos—y destruye, desde sus más profundos cimientos, la base misma del derecho que siglos de dolor y de injusticia social han ido forjando en lenta, pero firme, concreción de valores humanos reales.

De ahora en adelante, el hijo natural tendrá que ejercitar la acción para reclamar su filiación, no durante toda la vida

del padre, o un año después de su muerte, u, ocurrida ésta durante su menor edad, antes de que transcurran los primeros cuatro años de llegar a su mayoría, según establece el artículo 126 del Código Civil, ed. 1930, sino cuando el padre, en defensa anticipada y profiláctica contra una posible acción filiatoria, escoja el momento para hacerlo litigar.

De ahora en adelante, el hijo natural tendrá que litigar, a capricho del padre, cuando aún sus ojos, recién abiertos a la vida, no hayan podido captar siquiera la fisonomía de aquél que lo ha engendrado.

¿Y por qué también no tendrá que litigar, aún desde el seno materno, bajo la alegación de que la madre señala al demandante como autor del embarazo, y éste desea limpiar su nombre de una vez y para siempre del estigma que rechaza y en evitación de que se reclame judicialmente alimentos tan pronto ocurra el alumbramiento?

Contra los rumores públicos, contra la representación u ostentación pública de que se es *hijo*, quien se sienta perjudicado puede oponer, si no le basta la negación pública, la acción judicial apropiada—limitada en sus consecuencias jurídicas—no para que se niegue y adjudique definitivamente el derecho de filiación de quien las hace, sino para que se impida que éste, sin tener un estado civil declarado judicialmente que a ello le autorice, usurpe su nombre u ostente una condición que en su actual estado no puede disfrutar.

La sentencia en un juicio declarativo de filiación en pleito instado por el hijo, denomínese el mismo *acción filiatoria* o *sentencia declaratoria* a esos fines—no en pleito instado por el padre—tiene el efecto de establecer judicialmente, si resulta victorioso, su estado civil, el nexo jurídico con el demandado, nexo generador de derechos y deberes bajo la ley. El estado civil del hijo victorioso, si bien produce efectos jurídicos desde el nacimiento, no surge a la vida del derecho hasta que media la declaración judicial.

La Ley de Sentencias Declaratorias, de naturaleza procesal, no crea *causa* para la acción, sólo provee un remedio. No suple la *causa,* aunque autoriza la acción. Por la naturaleza, objetivo y eficacia útil de dicha ley, la sentencia declaratoria que en virtud de ella se dicte, debe poner fin, definitivamente, a una controversia. En tal virtud, dicha sentencia produce efectos de cosa juzgada en un pleito posterior entre las mismas partes en el que se plantee la misma controversia. *Causa* para el ejercicio de una acción, en esa esfera, significa "el fundamento capital, el origen de una acción", 8 Manresa, Comentarios al Código Civil, 237, 238; significa el "fundamento o razón de pedir, siendo la *acción* la mera modalidad procesal, que es necesaria para efectivar aquélla en juicio." Sentencia del Tribunal Supremo de España de 15 de febrero de 1921.

El Código Civil y la Ley 229, supra, no reconocen al padre natural una causa de acción *negatoria de filiación,* por la que éste pueda protegerse contra el ejercicio futuro por el hijo de la que a éste se le reconoce para reclamar su filiación y obligar al hijo a litigar anticipada y definitivamente el derecho sustantivo que a su vez la ley confiere al hijo para *obligar* al padre a filiarle. El artículo 125 del Código Civil, ed. 1930, al establecer que "El padre está obligado a reconocer al hijo natural" en los casos allí enumerados, creó una responsabilidad legal en el padre, con el correspondiente derecho en el hijo para reclamarla, dentro de los términos prescritos por el artículo 126 del mismo cuerpo legal. El período prescriptivo dentro del cual la acción debe ser ejercitada por el hijo es una limitación a la obligación de reconocer que impone al padre. El período para el ejercicio de la acción forma parte de la esencia del derecho del hijo, y este derecho se pierde únicamente si no se reclama dentro del período prescrito. La obligación del padre y el remedio del hijo han sido establecidos por el propio Código, y las limitaciones al remedio del hijo deben ser tratadas como limitaciones a su derecho sus-

tantivo. El término de duración de la acción para reclamar el reconocimiento "afecta a la substantividad de tan importante derecho", ha declarado el Tribunal Supremo de España en Sentencias de 28 de diciembre de 1906, 22 de abril de 1908, 2 de abril de 1909 y 24 de junio de 1930, "a la existencia misma del derecho", ya que "en el artículo 135 [Código Civil Español, 125 nuestro] no se trata de meras reglas de procedimiento", Sentencias de 23 de septiembre de 1898 y de 27 de marzo de 1920. La acción filiatoria bajo el artículo 135 del Código Civil Español (125 nuestro) no tiene limitación alguna en cuanto al tiempo en que se ha de *empezar* a ejercitar mientras el padre vive pues el 137 (126 nuestro) sólo pone límite a esa acción después de muerto el padre; y siendo menor, hasta los 4 años después de ser mayor. Sentencias de 23 de junio de 1902 y de 26 de marzo de 1904. *Cf. The Harrisburg,* 119 U. S. 199, 30 L. ed. 358, y opinión disidente del Juez Jackson en *Wells* v. *Simonds Abrassive Co.,* 345 U. S. 514, 519, 97 L.Ed. 1211, 1216; *Parker* v. *Fies & Sons,* 243 Ala. 348-350, 10 S.2d 13; *Lewis* v. *Reconstruction Finance Corporation,* 177 F.2d 654-5. La Ley de Sentencias Declaratorias, de naturaleza procesal, no puede destruir el derecho sustantivo de un hijo natural a su filiación, privándole del ejercicio de su acción dentro de los términos fijados por el Código. Ese es, en efecto, el alcance de la decisión de hoy en este caso.

El Tribunal descansa en las disposiciones de la sección 1 de la Ley de Sentencias Declaratorias, de 25 de abril de 1931, que autoriza a nuestros tribunales a "declarar derechos, *estados* y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio" (subrayado nuestro), pudiendo ser dicha declaración "en su forma y efectos, afirmativa o negativa, y tendrán la eficacia y valor de las sentencias o resoluciones definitivas." Ni un solo precedente jurisprudencial cita el Tribunal con relación a procedimientos de sentencias declaratorias—en cuanto a status de ilegitimidad de los

hijos—que no sean procedimientos en los cuales la parte actora era el propio hijo. No se cita precedente alguno en que se ejercite, por vía de acción sobre sentencia declaratoria, una acción *negatoria de filiación* por el padre. Es obvio que así sea. La Ley de Sentencias Declaratorias, que es una ley de remedios, presupone una relación jurídica—no una ausencia de relación jurídica—entre las partes, cuya inseguridad o incertidumbre hagan aconsejable la determinación de los derechos inciertos o inseguros bajo tal relación jurídica. Como se dijo en la opinión disidente en *Morecroft* v. *Taylor*, 225 App. Div. 562, 564, 234 N.Y.S. 2, 6 (1929), la sentencia declaratoria "no fija un *status* social, sería meramente un *brutum fulmen* respecto a futuras temporalidades, no alcanzando nada sino desgracia en el presente."

La cuestión fundamental en el presente caso no es si el procedimiento de sentencia declaratoria ofrece a la parte demandada oportunidades amplias para litigar la cuestión que se suscite en la demanda. Con relación a los derechos de los hijos naturales, la cuestión gira alrededor de si una ley de remedios puede destruir derechos sustantivos. El Estado, por la trascendencia social de esos derechos, los ha consagrado y reglamentado especialmente. El alcance que a la Ley de Sentencias Declaratorias puedan haber dado otros tribunales en casos que envuelven derechos personales o de propiedad, no debe establecer norma para la interpretación que debamos dar a dicha ley en casos que envuelven derechos de los hijos. En palabras del Juez Frankfurter en su opinión concurrente en *May* v. *Anderson*, 345 U. S. 528, 535, 97 L. Ed. 1221, 1228, "Reclamaciones de propiedad o personales, y aún el status matrimonial . . . generalmente originan intereses distintos de aquéllos que conciernen el cumplimiento continuo de su responsabilidad por el Estado hacia los niños dentro de sus límites. Los niños tienen una posición muy especial en la vida, que la ley debe reflejar. Las teorías legales y su fraseología en otros casos, conducen a razonamientos

falaces si indistintamente se aplican a la determinación del deber del Estado hacia los niños."

No creo que la Ley de Sentencias Declaratorias sea "incompatible con el sistema tradicional del derecho civil", porque no ha sido adoptada para derrotar derechos sustantivos, ni ello cae dentro del ámbito de sus consecuencias jurídicas. La acción de "jactancia", Ley 46, Título II, Partida Tercera —que de acuerdo con la sentencia del Tribunal Supremo de España de 27 de septiembre de 1912 a que hace referencia la opinión del Tribunal, no ha sido derogada por las disposiciones del Código Civil Español, pues no siendo, como no era, "un derecho de naturaleza sustantiva o civil" no tenía, no podía tener, el efecto de derogar, ni a su vez el de ser derogada, por disposiciones substantivas de ley. La acción de *jactancia*—que constituía una excepción a la regla general de que no se puede obligar a una persona a que inicie un pleito contra su voluntad—ha sido prácticamente convertida en un remedio innecesario con el desarrollo de las acciones por libelo y calumnia, y por la de daños. Borchard, *Declaratory Judgments*, pág. 115. Dicha acción no existe en Puerto Rico, pero la decisión de hoy parece adoptarla dentro de la Ley de Sentencias Declaratorias. Ese no es el objetivo remedial de dicha ley. Si se lo atribuyéramos, estaríamos negando su virtualidad y la utilidad práctica de su propósito.

A mi juicio la sentencia debería confirmarse.